IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN BALDWIN, </br></br> Plaintiff, </br></br> v. </br></br> CREATE CF, LLC, </br></br> and </br></br> RYAN DOSSEY, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) Case No. 4:22-cv-01165 </br> ) </br> ) JURY TRIAL REQUESTED </br> ) </br> ) </br> ) </br> ) </br> ) |

## COMPLAINT

COMES NOW Plaintiff Stephen Baldwin ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendants Create CF, LLC ("Create") and Ryan Dossey, states as follows:

## THE PARTIES

1. Plaintiff Baldwin is a St. Louis, Missouri resident who was hired and worked as a sales representative for Defendant located in Missouri throughout the tenure of his position.

2. Defendant Create CF is an Indiana limited liability company owned and operated by Dossey. Create CF's principal place of business is in Indianapolis, IN. Create CF is also registered as a Florida foreign limited liability company with a mailing address in Pensacola, FL.

3. Create CF is engaged in the business of selling memberships and providing its customers real estate insight and strategy instruction services in the State of Missouri and throughout the United States.

1

4. Defendant Ryan Dossey is a Pensacola, Florida resident who founded Create CF and acts as its sole managing member.

## JURISDICTION AND VENUE

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists between all parties and the matter in controversy exceeds $75,000.00.

6. Venue is proper under 28 U.S.C. 391(b) as a substantial part of the events or omissions giving rise to the claims contained herein occurred within this District. Baldwin lives and worked for Create CF within this District.

## FACTUAL BACKGROUND

7. On or about February 20, 2020, Ryan Dossey filed with the State of Indiana as the Managing Member and Registered Agent of Create CF. (Ex. 1, Business Details for Create CF from the Indiana Secretary of State).

8. Since that time, Dossey has exerted complete domination, not only of the finances, but of policy and business practices of Create CF in all respects such that the corporate entity has had at no time any separate mind, will, or existence of its own. Create CF has no employees.

9. Around this time, Dossey and Baldwin orally agreed that Baldwin would work with Dossey in exchange for compensation through commissions on purchases of access to Create CF's real estate content.

10. On or about March 5, 2020, Dossey and Baldwin commemorated this agreement in an email exchange between their personal email addresses. (Ex. 2, Email Agreement).

11. At no time did Dossey clarify that he entered this agreement solely in his capacity as the managing member of Create CF and not on his own behalf. Dossey also never sought to

establish the terms of this agreement in any instrument naming Create CF, and not Dossey on his own behalf, as the party to the agreement with Baldwin.

12. The agreement between Dossey and Baldwin provided for Baldwin to receive a flat fee ("kicker") of $250 for each new customer Baldwin secured. Additionally, the agreement provided for Baldwin to be paid 10% of all completed sales paid to Create CF. This included annual lump sums ("paid-in-full's" or "PIFs"), monthly or other periodic payments, and monthly continuations after the expiration of customers' initial annual contracts.

13. Pursuant to this agreement, Baldwin served as the "director of sales" for Create CF, wherein he solicited customers for Create CF in exchange for compensation by commission. Throughout the time that Baldwin was in this role, Create CF had no other persons, firms, corporations, partnerships, or other business entities who solicited customers for Create CF in exchange for compensation by commission.

14. Create CF would confirm sales to customers through contracts between Create CF and the customer.

15. The customer-contracts provide that Create CF would license access and use of its "Learning Library," access to "Monday accountability software," "accountability check-ins" by Dossey's team, access to Dossey's team, "Group Slack" access, two (2) weekly "office hours" with Dossey and his team, and other discounts and perks.

16. In exchange, Create CF's customers would agree to pay an annual fee, either as a PIF or in monthly or other periodic installments.

17. After the expiration of the first year, customers could continue their contract with Create CF on a month-to-month basis.

18. In or around March 2021, Dossey and Baldwin agreed to increase Baldwin's kicker for each new customer to $350, in accordance with the customer price increase from $12,000 per year to $15,600 per year.

19. Over the course of the several years that Baldwin worked in this capacity, he sold over four hundred (400) contracts to customers for Create CF.

20. As of the end of August 2022, over eighty (80) of these customers were continuing to make recurring payments to Create CF, many of which were continuing beyond the expiration of their initial contracts. Based on information and belief, many customers continued contracts through September 2022, and many will continue into the future.

21. In accordance with the agreement between Dossey and Baldwin, Create CF paid Baldwin 10% of all completed transactions, including an ongoing commission on all recurring payments from customers beyond their initial annual contracts.

22. On or about the beginning of each month, Baldwin sent an invoice, based on Create CF's internal information that he had access to, to Dossey's personal email for the commissions he was owed based on completed sales paid to Create CF. (*See*, *e.g.*, Ex. 3, August 2022 Invoice Sent September 1, 2022).

23. No later than the fifth day of every month, Create CF deposited payment for the invoice directly into Baldwin's bank account by either wire transfer or ACH payment. (*See*, *e.g.*, Ex. 4, Bank Record of Payment for August 2022 Invoice).

24. On or about September 1, 2022, Dossey unilaterally announced to Baldwin by way of a message posted to Slack that Create CF would no longer pay him his promised 10% commission on past sales because it would not be "beneficial for the company to continue to pay the current recurring revenue % any longer." Instead, Dossey announced that the company would

only pay Baldwin 6% of recurring payments from past sales Baldwin had already secured. (Ex. 5, Slack Post).

25. On or about September 8, 2022, Baldwin sent a recorded video outlining his objections to Dossey's unilateral alteration of the existing agreement, especially as to past sales already secured.

26. In response, Dossey cut off Baldwin's access to any of Create CF's internal communications and data storage systems, effectively terminating Baldwin's business relationship with Create CF. Dossey then notified Baldwin of this by way of a phone call.

27. On or about September 13, 2022, Create CF deposited the $325 kicker into Baldwin's account for the last sale that Baldwin had secured prior to the termination of his business relationship with Create CF.

28. Since this time, Defendants have refused to pay Baldwin any of the commissions that they owe him under the agreement, despite Baldwin's repeated demands for payment.

29. Plaintiff pleads statutory violations for failure to pay commissions under Missouri law, or in the alternative under Indiana law or Florida law, depending on the choice of law, along with common law claims.

## COUNT I – REV. STAT. MO. § 407.913
### (MISSOURI COMMISSION SALES ACT VIOLATIONS)

30. Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

31. Plaintiff was a "sales representative" within the meaning of Rev. Stat. Mo. § 407.911.

32. Defendants are "principal[s]" within the meaning of Rev. Stat. Mo. § 407.911.

33. Plaintiff and Defendants entered an agreement, whereby Defendants agreed to pay Plaintiff commissions of 10% on all completed sales paid to Create CF that Plaintiff had secured.

34. Per his agreement with Defendants, Plaintiff is entitled to this commission percentage on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

35. Plaintiff has not been paid this commission percentage on any sales since September 13, 2022.

36. Pursuant to Rev. Stat. Mo. § 407.912, Defendants were obligated to pay Plaintiff commissions at the contractually agreed-upon rate of 10% on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

37. The next installment of these commission payments was due and payable by October 5, 2022. Over the next year, Defendants will receive monthly recurring payments from forty-five (45) customers under contract with Create CF that Plaintiff sold for Defendants prior to September 8, 2022. Additionally, Defendants will receive recurring payments from many customers continuing to pay for access to Defendants' content beyond the expiration of their contracts with Defendants due to sales secured by Plaintiff.

38. Defendants have failed, and refuse, to timely pay the contractually agreed-upon commissions to Plaintiff, and, as a result, Defendants violated Rev. Stat. Mo. § 407.913.

39. As a result of Defendants' failure to pay commissions owed to Plaintiff, and their decision to withhold these commissions from Plaintiff, Defendants violated, and continue to violate, Missouri law.

40. As a result of said statutory violations, Plaintiff sustained damages and will continue to sustain damages. Plaintiff is entitled not only to his unpaid commissions, but also an additional amount as if he were still earning commissions calculated on an annualized pro rata basis from September 8, 2022 to the date of payment, which has not yet occurred.

41. Further, as a result of Defendants' violation of Rev. Stat. Mo. § 407.913, Plaintiff is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) all of his unpaid commissions, in amounts to be determined at trial; (2) an additional amount to be determined at trial as if he were still earning commissions calculated on an annualized pro rata basis from September 8, 2022 to the date of payment; (3) reasonable attorneys' fees, costs, and expenses incurred; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other and further relief as the Court deems fair and equitable.

### COUNT II – IND. CODE § 24-4-7-5 (2012)
### (INDIANA SALES REPRESENTATIVE ACT VIOLATIONS)

42. Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

43. Plaintiff was a "sales representative" within the meaning of I.C. § 24-4-7-4.

44. Defendants are "principal[s]" within the meaning of I.C. § 24-4-7-3.

45. Plaintiff and Defendants entered an agreement, whereby Defendants agreed to pay Plaintiff commissions of 10% on all completed sales paid to Create CF that Plaintiff had secured.

46. Per his agreement with Defendants, Plaintiff is entitled to this commission percentage on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

7

47. Plaintiff has not been paid this commission percentage on any sales since September 13, 2022.

48. Pursuant to I.C. § 24-4-7-5, Defendants were obligated to pay Plaintiff commissions at the contractually agreed-upon rate of 10% on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

49. The next installment of these commission payments was due and payable by October 5, 2022. Over the next year, Defendants will receive monthly recurring payments from forty-five (45) customers under contract with Create CF that Plaintiff sold for Defendant prior to September 8, 2022. Additionally, Defendants will receive recurring payments from many customers continuing to pay for access to Defendants' content beyond the expiration of their contracts with Defendants due to sales secured by Plaintiff.

50. Defendants have in bad faith failed, and refuse, to timely pay the contractually agreed-upon commissions to Plaintiff, and, as a result, Defendants violated I.C. § 24-4-7-5.

51. As a result of Defendants' failure to pay commissions owed to Plaintiff, and their decision to withhold these commissions from Plaintiff, Defendants violated, and continue to violate, Indiana law.

52. As a result of said statutory violations, Plaintiff sustained damages and will continue to sustain damages. Plaintiff is entitled not only to his unpaid commissions, but also exemplary damages in an amount no more than three (3) times the sum of the commissions owed to him.

53. Further, as a result of Defendants' violation of I.C. § 24-4-7-5, Plaintiff is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) exemplary damages, to be determined at trial, of no more than three times the sum of the commissions owed to him; (2) reasonable attorneys' fees, costs, and expenses incurred; (3) pre-judgment and post-judgment interest as provided by law; and (4) such other and further relief as the Court deems fair and equitable.

## COUNT III – § 686.201, FLA. STAT. (2010)
## (FLORIDA COMMISSION SALES ACT VIOLATIONS)

54. Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

55. Plaintiff was a "sales representative" within the meaning of § 686.201(1)(c), Fla. Stat.

56. Defendants are "principal[s]" within the meaning of § 686.201(1)(b), Fla. Stat.

57. Plaintiff and Defendants entered an agreement, whereby Defendants agreed to pay Plaintiff commissions of 10% on all completed sales paid to Create CF that Plaintiff had secured.

58. Per his agreement with Defendants, Plaintiff is entitled to this commission percentage on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

59. Plaintiff has not been paid this commission percentage on any sales since September 13, 2022.

60. Pursuant to § 686.201(3)(a), Fla. Stat., Defendants were obligated to pay Plaintiff commissions at the contractually agreed-upon rate of 10% on all sales he secured prior to September 8, 2022, including the ongoing recurring payments from those sales he secured prior to September 8, 2022.

61.     The next installment of these commission payments was due and payable by October 5, 2022. Over the next year, Defendants will receive monthly recurring payments from forty-five (45) customers under contract with Create CF that Plaintiff sold for Defendant prior to September 8, 2022. Additionally, Defendants will receive recurring payments from many customers continuing to pay for access to Defendants' content beyond the expiration of their contracts with Defendants due to sales secured by Plaintiff.

62.     Defendants have failed, and refuse, to timely pay the contractually agreed-upon commissions to Plaintiff, and, as a result, Defendants violated § 686.201(3)(a), Fla. Stat.

63.     As a result of Defendants' failure to pay commissions owed to Plaintiff, and their decision to withhold these commissions from Plaintiff, Defendants violated, and continue to violate, Florida law.

64.     As a result of said statutory violations, Plaintiff sustained damages and will continue to sustain damages. Plaintiff is entitled to damages equal to triple the amount of his unpaid commission.

65.     Further, as a result of Defendants' violation of § 686.201(3)(a), Fla. Stat., Plaintiff is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) triple the amount of all his unpaid commissions, in amounts to be determined at trial; (2) reasonable attorneys' fees, costs, and expenses incurred; (3) pre-judgment and post-judgment interest as provided by law; and (4) such other and further relief as the Court deems fair and equitable.

## **COUNT IV – BREACH OF CONTRACT**

66.     Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

67. Defendants entered into an agreement with Plaintiff, whereby Defendants agreed to pay Plaintiff commissions at a certain rate on all completed sales.

68. Defendants breached and violated the agreement by failing to pay Plaintiff his commissions. Specifically, Plaintiff was owed commissions on sales he secured prior to the termination of his business relationship with Defendants on September 8, 2022, but Defendants failed to pay said commissions to Plaintiff.

69. Defendants breached and continue to breach and violate the agreement by failing to pay Plaintiff commissions on sales he secured prior to September 8, 2022. Defendants' breach of the agreement was willful and not the result of mistake or inadvertence.

70. As a direct result of Defendants' unlawful conduct, Plaintiff suffered a loss of these commissions.

71. Prior to Defendants' breach and violation of the agreement, Plaintiff performed his duties under the agreement.

72. As a direct result of Defendants' violation and breach of the agreement, Plaintiff has been damaged.

73. Plaintiff is entitled to damages equal to all unpaid commissions.

74. Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) all of his unpaid commissions; (2) pre-judgment and post judgment interest as provided by law; and (3) such other and further relief as the Court deems fair and equitable.

## COUNT V – QUANTUM MERUIT

75. Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

76. Plaintiff conferred a benefit upon Defendants by soliciting customers purchasing contracts granting the customers access to Defendants' products and services, and by working for Defendants without receiving the commissions he was promised and due.

77. Defendants had an appreciation and knowledge of the benefit conferred by Plaintiff.

78. Defendants accepted and retained the benefit provided by Plaintiff under such circumstances so as to make it inequitable for Defendants to retain the benefit without payment of its value.

79. As a direct result of Defendants' failure to pay Plaintiff his due commissions, Plaintiff has been damaged.

80. Plaintiff is entitled to damages equal to all of his unpaid commissions.

81. Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) all unpaid commissions; (2) pre-judgment and post-judgment interest as provided by law; and (3) such other and further relief as the Court deems fair and equitable.

## COUNT VI – UNJUST ENRICHMENT

82. Plaintiff reasserts and incorporates by reference the allegations in the preceding paragraphs.

83. By failing to provide Plaintiff with his due and payable commissions, Defendants obtained substantial benefits and have been unjustly enriched. Defendants' conduct was willful

and not the result of mistake or inadvertence. It would be inequitable for Defendants to retain the benefits received.

84. As a direct result of Defendants' unlawful conduct, Plaintiff suffered a loss of commissions.

85. Plaintiff is entitled to damages equal to all of his unpaid commissions.

86. Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

WHEREFORE, Plaintiff demands judgment against Defendants and prays for: (1) all of his unpaid commissions; (2) pre-judgment and post-judgment interest as provided by law; and (3) such other and further relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Respectfully submitted,

By:    */s/ Kevin J. Dolley*
Kevin J. Dolley (E.D. Mo. #54132MO)
DOLLEY LAW, LLC
12977 N. Outer Forty Dr., Suite 230
St. Louis, MO 63141
(314) 645-4100 (office)
(314) 736-6216 (fax)
kevin@dolleylaw.com

*Attorney for Plaintiff Stephen Baldwin*